STATE OF NEW YORK
SUPREME COURT: COUNTY OF MONTGOMERY

RECEIVED
MONTGOMERY COUNTY

18 JUN 27 AM 11: 06

CLERK'S OFFICE
FONDA, NEW YORK

SONIA HERNANDEZ,
Plaintiff,

v.

Index No.: _____

KWIAT EYE AND LASER SURGERY, PLLC
and DAVID M. KWIAT, M.D.

Defendants.

**SUMMONS**

TO DEFENDANTS:

YOU ARE SUMMONED to appear in this action by serving your answer to the complaint on

Plaintiff's attorney within the time limits stated below.  Montgomery County is designated as the

county where this action will be tried, because one or more of the parties to this action resides in

that county. If this action is based upon a consumer credit transaction, that county is designated

because one or more of the defendants resides in that county or because the transaction sued upon

occurred in that county.

TIME LIMITS TO ANSWER:

    (1)    If this summons is served by delivery to you personally within New York
        State, you must answer the complaint within TWENTY (20) days after such
        delivery.

    (2)    If this summons is not served by delivery to you personally within New
        York State, and not served pursuant to CPLR 312-a, you must answer the complaint
        within THIRTY (30) days after service is complete.

    (3)    If this summons is served pursuant to CPLR 312-a, see accompanying
        STATEMENT OF SERVICE BY MAIL for time limits to answer.

**IF YOU FAIL TO ANSWER THE COMPLAINT** within the time stated, judgment will be
entered against you for the relief demanded in the complaint.

Dated: June 25, 2018
        Cheektowaga, New York

By:  Harvey P. Sanders, Esq.
Sanders & Sanders
Attorneys for Plaintiff
401 Maryvale Drive
Cheektowaga, New York 14225
(716) 839-1489

STATE OF NEW YORK
SUPREME COURT: COUNTY OF MONTGOMERY

RECEIVED
MONTGOMERY COUNTY

18 JUN 27 AM 11: 06

SONIA HERNANDEZ,
Plaintiff,

Index No.

CLERK'S OFFICE
GONDA, NEW YORK

v.

KWIAT EYE AND LASER SURGERY, PLLC
and DAVID M. KWIAT, M.D.
                    Defendants.

COMPLAINT

JURY TRIAL DEMANDED

Sonia Hernandez ("Plaintiff") by and through her attorneys, Sanders & Sanders, alleges upon

information and belief as follows for its complaint against Defendants Kwiat Eye and Laser

Surgery, PLLC ("Kwiat Eye") and David M. Kwiat, M.D. ("Dr. Kwiat"):

### Nature of Complaint

1. This is a proceeding for damages for a breach of contract and tortious interference with

   contractual relations arising from Defendants' conduct in violating common law

   obligations.


### Jurisdiction and Venue

2. The jurisdiction of this Court is invoked on the grounds that the acts challenged are in

   violation of the laws of the State of New York.

3. Pursuant to section 503 of the New York Civil Practice Law and Rules, venue is proper.


### Parties

4. Sonia Hernandez, M.D., is a citizen of the United States and a resident of the State of

2

New York and Texas. Plaintiff was employed as a full-time Ophthalmologist, providing care at Kwiat Eye. Plaintiff currently resides in Amsterdam, New York and permanently resides in Grand Prairie, Texas.

5. Kwiat Eye is a Professional Limited Liability Company, with a business address at 100 Holland Circle Drive, Amsterdam, New York 12010.

6. Dr. Kwiat is an Ophthalmologist and managing member of Kwiat Eye.

<u>Statement of Claim</u>

7. Plaintiff and Defendants signed an employment agreement, entitled Agreement Between Kwiat Eye and Laser Surgery, PLLC and Sonia Hernandez in December 2015 (the "Agreement"). A copy of the Agreement is attached as **Exhibit A**.

8. Plaintiff began performing services as an Ophthalmologist with Defendants on March 14, 2016.

9. Plaintiff continued to perform services as an Ophthalmologist with Defendants until April 13, 2018, when Dr. Kwiat terminated her employment.

10. Thereafter, Plaintiff was in the process of applying for her Texas Medical license with the Texas Medical Board and was required by the Texas Medical Board to complete her portion of Form L, Physician Licensure Evaluation, Verification of Postgraduate Training and Professional Evaluation. She did so.

11. There is also an employer's portion that must be completed in order for the application to be processed. A copy of the Form L is attached as **Exhibit B**. Without that portion completed, the application will not be considered.

12. Defendants refused to complete the employer's portion of Form L. Instead, Defendants drafted a Mutual Release and Agreement (the "Mutual Release") between Defendants

3

and Plaintiff that essentially stated that Defendants would only complete Form L for

Plaintiff in exchange for Plaintiff signing the Mutual Release. A copy of the Mutual

Release is attached as **Exhibit C**. Plaintiff did not sign the Defendants' Mutual Release.

13. Plaintiff had already signed the release on Form L, and the Texas Medical Board noted

on Form L that the Texas Medical Practice Act grants an immunity to entities providing

the relevant information.

14. The Texas Medical Board requires a fully-completed Form L in order to process

Plaintiff's application for her license.

15. Plaintiff, through her attorney, requested that Dr. Kwiat and his office manager, Steve

Kwiat, submit the Form L via a letter dated May 7, 2018 and follow-up emails on May 14

and May 18, 2018, attached hereto as **Exhibit D**. No response has been received to date.

16. After termination from Kwiat Eye, Plaintiff had two potential job offers, one in Texas

and one in Norwich, New York. On or about May 14, 2018, the employer in Texas

emailed Plaintiff a Physician Employment Agreement, but it was contingent on her

obtaining her Texas Medical License. The potential employer in Norwich, New York

asked Plaintiff to complete an employment application and to submit all medical licenses.

17. In addition, Plaintiff has a pending potential job offer in Buffalo, New York.

18. On or about June 11, 2018, Plaintiff was notified by the employer in Texas that they

were unable to offer Plaintiff the position. A physician at this employer specifically

stated the reason that Plaintiff could not be offered the position was the delay in

obtaining the Texas Medical license. The physician at the Norwich, New York employer

informed Plaintiff that she was no longer considering Plaintiff for employment, in part

due to her frustration with trying to get information from defendants.

## FIRST CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH A PROSPECTIVE
## CONTRACTUAL RELATIONSHIP

19. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 18.

20. Defendants have attempted to impede Plaintiff's ability to continue with the license application process by refusing to complete and submit the Form L to the Texas Medical Board in the absence of their signed Mutual Release and Agreement.

21. Defendant's interference is intentional, unfair and otherwise improper. There is no legal justification for Defendants to not complete the Form L.

22. Plaintiff has sustained losses and damages as a direct result of Defendant's wrongful actions with at least two potential employment opportunities. Defendant knew that Plaintiff would sustain such losses as a result of the refusal to complete Form L.

23. Plaintiff is entitled to injunctive relief in order to prevent Defendants' continued actual interference.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

24. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23.

25. Defendants breached the Agreement (Number 10, Termination, 10.9) that states either party may terminate this Agreement by giving one hundred eighty (180) days written notice of termination to the other.

26. Defendants emailed and mailed (by Certified U.S. Mail) a letter to Plaintiff, dated April 13, 2018, stating that her employment was terminated "effective as of the close

5

of business on April 13, 2018." A copy of Defendants' letter is attached as Exhibit E.

27.  Defendants' failure to provide the contractual notice deprived Plaintiff of employment and income for 180 days.

28.  Defendants also breached the Agreement (Number 7, Vacations, CME, Employee Benefits) regarding earned time off (used as sick/vacation/personal time). Plaintiff is entitled to fifteen (15) days of compensated leave during each calendar year.

29.  Plaintiff has 15 unused days of earned time off for 2018 and she claims that Kwiat Eye has not paid her for this time to date.

30.  On or about April 28, 2018, Kwiat Eye replied back to Plaintiff's email inquiry about whether or not she would be paid vacation pay by stating it would not be paying vacation time.

31.  Defendants also breached the Agreement (Number 4, Compensation, 4.3) regarding Plaintiff's incentive compensation bonus.

32.  Plaintiff was eligible, beginning in 2017, to receive the incentive compensation bonus of $50,000.00 at the end of the year if fees actually collected and attributable to services rendered by her exceed one million dollars.

33.  Plaintiff received two different accountings of her fees on which to calculate this year-end bonus. The first accounting showed she was entitled to an incentive bonus. The second accounting had her well below the bonus mark. She asked for, but did not receive, a meeting with the manager because of the discrepancy. She was not paid the year-end bonus. Upon information and belief, Plaintiff was entitled to an incentive bonus for 2017.

6

34.    WHEREFORE, Plaintiff demands judgment as follows:

a.    On the First Cause of Action, an order requiring Defendants to complete the

Texas Form L and damages in an amount to be determined at trial;

b.    On the Second Cause of Action, an amount to be determined at trial; and

c.    Such other and further relief as the Court deems just and proper.

Dated: June 25, 2018
      Cheektowaga, NY

                                      Harvey P. Sanders, Esq.
                                      Sanders & Sanders
                                      *Attorneys for Plaintiff*
                                      401 Maryvale Drive
                                      Cheektowaga, New York 14225
                                      (716) 839-1489

7

Exhibit A

# AGREEMENT BETWEEN KWIAT EYE AND LASER SURGERY, PLLC
## AND
### Sonia Hernandez

THIS AGREEMENT, made and effective as of the 26th day of December, 2015 between KWIAT EYE AND LASER SURGERY, PLLC, 100 Holland Circle Drive, Amsterdam, New York, 12010 ("Employer") and Sonia Hernandez residing at

**RECITALS:**

1. Employer is a Professional Limited Liability Company, formed under the laws of the State of New York, and is engaged in the practice of medicine.

2. Hernandez is an Ophthalmologist, eligible for licensure by the State of New York, and has represented to Employer that she will be licensed by the State of New York prior to her start date pursuant to this agreement.

**AGREEMENT:**

1. **Hernandez's REPRESENTATIONS, WARRANTIES AND COVENANTS.**

    Hernandez represents and warrants that as continuing conditions of this Agreement:

    1.1 She is an ophthalmologist who shall be duly licensed by the State of New York no later than March, 2016 and, at the time of her commencement of employment will be in good standing to practice ophthalmology in the State of New York and that she shall maintain such licensure throughout the term of this Agreement;

    1.2 she agrees to be a participating ophthalmologist in, and accept assignment for payment under the Medicaid and Medicare programs;

    1.3 she agrees to participate in any third party payor or managed care program, including but not limited to health maintenance organizations and preferred provider organizations that Employer participates in;

    1.4 she has not been excluded from or sanctioned by any federal or state health care program;

    1.5 she will satisfactorily perform her responsibilities to Employer;

2. **TERM.**

    2.1 At the Employer's sole discretion, Hernandez may commence employment before the warranties and conditions precedent set forth in Paragraph 1.3 and 1.4 have been satisfied.

2.2    The Commencement Date of this agreement shall be on or about March, 2016 and shall terminate on March, 2021.

2.3    Upon expiration of this Agreement, the contract will automatically renew on a yearly basis.

3    Hernandez's DUTIES.

3.1    <u>Full-Time Employment</u>. Hernandez shall perform her duties as a full-time employee providing care at Kwiat Eye and Laser Surgery, 100, Holland Circle Drive, Amsterdam, New York and Mohawk Valley Eye Surgery Center 108 Holland Circle Drive, Amsterdam, New York.

3.1.1    <u>Schedule</u>. Hernandez's scheduled work hours shall be Monday, Tuesday, Wednesday, Thursday and Friday from 7:30am until 4:30pm, it is appreciated if time off is determined at least three (3) months in advance. It is not anticipated that a formal lunch time will be required.

3.1.2    <u>Call duties</u>.    Call duties will be shared equally among providers; this constitutes home call and not hospital call. Arrangements will be made so that call duties do not coincide with vacation time.

3.2    <u>Clinical Activities</u>.    Hernandez will at all times, professionally, ethically, faithfully, industriously and to the best of her ability, perform the essential function of her employment as an ophthamologist in accordance with the laws of the State of New York and with any employment policies promulgated by Employer.

4.    <u>COMPENSATION</u>

4.1    It is anticipated that Hernandez shall provide an average of at least forty-five hours (45) hours per week. Employer warrants that Hernandez will be assigned hours of employment which, if worked, will result in an annual earnings of no less than $200,000.00. Hernandez wages shall be paid in accordance with the Employer's payroll calendar.

4.2    <u>Incentive Compensation</u>. In addition to her base wage, Hernandez will be eligible for additional compensation. To be discussed after January 2017 if satisfactory performance and patient load is in place.

4.3    At the end of each calendar year (January-December) worked by Hernandez, Employer will calculate the total fees which were actually collected and attributable to services rendered by Hernandez.

Hernandez will be eligible to receive incentive compensation of $50,000.00 if fees actually collected and attributable to services rendered by Hernandez, exceed one million dollars ($1,000,000.00). Hernandez is eligible for this incentive starting January 2017.

4.4     Salary

$200,000 per year + Bonus.

4.5 Additional Benefits

Upon execution of this contract Hernandez will receive a $10,000.00 signing bonus. All relocation expenses will be reimbursed with submitted receipts.

5     BILLING AND FEES

5.1     Assignment

5.1.1     Hernandez assigns to Employer, or its designee, the exclusive right to bill and collect for Hernandez's services. Hernandez shall cooperate with Employer to complete any required reassignment forms. Hernandez authorizes Employer, or its designee, to enter into group agreements with third party payors on her behalf.

5.1.2     Hernandez shall promptly turn over to Employer any and all collections or other compensation received by Hernandez relating to services provided hereunder, other than compensation received by Hernandez pursuant to this Agreement.

5.2     Employer's Authority

5.2.1     Hernandez acknowledges that her employment in no way confers upon her any interest or claim in any fees that are charged by Employer for Hernandez's services.

5.2.2     Employer shall, in its absolute discretion, determine the fees to be charged for Siahpoosha's rendering of optometric services under this Agreement.

5.2.3     At Employer's election, and unless prohibited by law, Employer may bill for such professional services in the name Hernandez and on behalf of Hernandez, utilizing Hernandez's billing, provider or other identification number for such purposes.

6.     OWNERSHIP OF PATIENT RECORDS.

All patient files, financial records and other records pertaining to Employer's patients shall at all times be the property of Employer. All personnel records pertaining to Hernandez's

compensation and expenses within the scope of her employment shall at all times be the property of Employer.

7. **VACATIONS, CME, EMPLOYEE BENEFITS.**

    7.1    Earned Time Off. Employer will provide Hernandez with combined leave to be used as sick/vacation/personal time. Hernandez shall be entitled to fifteen (15) days of compensated leave during each calendar year of this Agreement, to be taken at times mutually agreed upon between Hernandez and Employer. In the first year of this agreement, these fifteen (15) days shall be prorated to reflect Hernandez's March, 2016 employment start date. In addition, Hernandez will be entitled to compensated holidays as determined by Employer.

    7.2    Continuing Medical Education. Hernandez will be permitted, upon approval by the Employer, to be absent from employment, for a period not to exceed five (5) days per year during the term of this Agreement, to attend meetings necessary to satisfy continuing medical education requirements. Attendance at such approved meetings shall be fully compensated service time and shall not be considered vacation time or earned time off. Employer shall reimburse Hernandez for all reasonable expenses incurred by her incident to continuing medical education incurred by Hernandez provided, however, that such reimbursement is approved in advance by Employer and provided that total cost for these meetings does not exceed One Thousand Dollars ($1,000) annually.

    7.3    Employee Benefits. Hernandez shall be eligible for full-time employee benefits offered by Employer after ninety days employment. Employer will pay half the cost of Hernandez's health insurance, through the carrier currently utilized by Employer; the other half shall be paid for by Hernandez by payroll deduction.

8. **INSURANCE.**

Employer agrees to:

    8.1    Provide professional liability insurance for Hernandez, at no cost to Hernandez and with a deductible, which shall cover Hernandez's clinical activities performed by Hernandez during and in furtherance of her employment by Employer. Upon Hernandez's separation from employment by Employer, Employer shall provide tail coverage for all clinical activities performed by Hernandez during and in furtherance of her employment by Employer;

9  **NON-COMPETITION.**

9.1    Except as expressly provided herein, during the Term and during the 18 month period following the termination or expiration of this Agreement (the "Restricted Period"), and provided that the actions would not constitute "abandonment" as defined by applicable laws, codes, rules and regulations, Hernandez shall not:

9.1.1    directly or indirectly, either as an employee, independent contractor, consultant, owner, officer or director or have a financial interest, as an investor, owner, employee or otherwise in any business which competes (ie provides any of the same or similar services) with Employer within twenty five (25) miles of the Employer's Amsterdam office location, which is currently located at 100 Holland Circle Drive Amsterdam, New York or Gloversville location at Second Ave, Gloversville, NY; should the Employer's physical location be relocated during Hernandez's employment, then the new site of Employer's physical office shall be the location from which this twenty five (25) mile radius is calculated. ("Restricted Territory"); or

9.1.2    Disrupt or attempt to disrupt the relationship, contractual or otherwise, between Employer and any patient, supplier, payor or employee of Employer. Additionally Hernandez shall not:

a.    solicit Employer's patients;

b.    send announcements or publications regarding new offices or employment affiliation to Employer's patients;

c.    remove patient records from Employer, unless a patient requests the transfer of his/his records in writing; and

d.    take, copy, or distribute in any way lists of Employer's patients.

9.2    Reasonableness of Restrictions.  The parties acknowledge that the Restrictions contained in this Paragraph 9 are reasonable and necessary to protect the legitimate interests of Employer and that any violation of such restrictions would result in irreparable injury to Employer for which money damages may not be readily ascertainable. Employer and Hernandez acknowledge that, in the event of a violation of any such restrictions which is not remedied within five (5) days after notice thereof, Employer shall be entitled to preliminary and permanent injunctive relief without having to prove actual damages or immediate or irreparable harm or to post a bond.    Employer shall also be entitled to an equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to other rights or remedies to which Employer may be entitled in law or equity.

9.3    **Blue Pencil**. If the restrictions are adjudged unreasonable in a court proceeding, the parties hereby agree to the reformation of such restriction by the Court to limits which it finds to be reasonable, and the parties shall not assert that such restrictions should be terminated in their entirety by such court. The parties acknowledge that the terms of this Paragraph 9 have been negotiated at arm's length with the advice of counsel. The parties agree that the restrictions shall be legally enforceable and shall not be challenged in any court proceeding.

10.    **TERMINATION**. Employer shall have the right to terminate this Agreement immediately upon the occurrence of any of the following:

10.1    termination, suspension, or non-renewal, curtailment, or revocation of Hernandez's license to practice ~~Optometry~~ *Ophthalmology* in the State of New York;

10.2    expulsion of, suspension of, or other final disciplinary action against Hernandez by a professional organization as a result of professional misconduct or resignation by Hernandez from any professional medical organization under threat of disciplinary action for professional misconduct;

10.3    failure of any of the conditions precedent under Paragraph 1 of this Agreement;

10.4    imposition of any sanctions, including exclusion, suspension, or other limitation, relating to v's Medicare or Medicaid participation;

10.5    death of Hernandez;

10.6    embezzlement or activities constituting a felony by Hernandez;

10.7    gross inattention to or willful neglect of the duties to be performed by Hernandez;

10.8    drug or alcohol abuse by Hernandez;

10.9    Notwithstanding any other term of this Agreement, either party may terminate this Agreement by giving one hundred eighty (180) days written notice of termination to the other.

11.    **ENTIRE AGREEMENT**. This contract constitutes the entire agreement between the parties and contains all the agreements between them with respect to the subject matter hereof. It also supersedes any and all other agreements or contracts, either oral or written, between the parties with respect to the subject matter hereof.

12. **NONWAIVER.** No waiver of any term or condition of this Agreement by either party shall be deemed a continuing or further waiver of the same term or condition or a waiver of any other term or condition of this Agreement.

13. **AMENDMENTS.** Except as otherwise specifically provided, the terms and conditions of this contract may be amended at any time by mutual agreement of the parties, provided that before any amendment shall be valid or effective it shall have been reduced to writing and signed by the managing member of the Employer and Hernandez.

14. **INVALIDITY OR UNENFORCEABILITY.** The invalidity or unenforceability of any particular provision of this contract shall not affect its other provisions, and this contract shall be construed in all respects as if such invalid or unenforceable provisions had been omitted.

15. **CONSTRUCTION AND ENFORCEMENT.** This Agreement shall be construed and enforced under and in accordance with the laws of the State of New York.

KWIAT EYE AND LASER
SURGERY, PLLC

By: _____          _____
       DAVID KWIAT                              Sonia Hernandez
       Managing Member                        Opththalmologist

Date: 12/26/2015 _____          Date: 12/31/2015 _____

Exhibit B

# FORM L
## Physician Licensure Evaluation
**REDACTED** Verification of Postgraduate Training and Professional Evaluation
Texas Medical Board

**APPLICANT:**
Complete the information in this box. You must have evaluations from every facility with which you have been affiliated in the past 5 years. Note – your licensure analyst may require additional evaluations outside the past 5 years.

Applicant's Current Full Name: SONIA HERNANDEZ at time of affiliation if different: N/A
Printed                                                    Printed

Applicant's Date of Birth: __                    Applicant TMB ID# _____

Applicant's Address: 271 MARKET ST          Telephone: 214-471-3597 E-Mail: sh891002@ohio.edu

Name of Evaluating Hospital/Institution KURAT EYE + LASER SURGERY

Address of Evaluating Hospital/Institution _____

Dates of affiliation From (mm/yy) 03/2016 To (mm/yy) 04/2018

Department of Affiliation OPHTHALMOLOGY

Your position at the time of affiliation:  ☐ Intern  ☐ Resident  ☐ Fellow  ☐ Faculty  ☑ Staff

I hereby authorize all hospitals, institutions or organizations, my references, personal physicians, employers (past, present and future), business or professional associates (past, present and future) and all governmental agencies (local, state, federal, or foreign) to release to the Texas Medical Board or its successors any information, files or records, including medical records, educational records, and records of psychiatric treatment and treatment for drug and/or alcohol abuse or dependency, requested by the Board in connection with this application, necessary to determine my medical competence, professional conduct, or physical and/or mental ability to safely engage in the practice of medicine. I further authorize the Texas Medical Board or its successors to release to the organizations, individuals, or groups listed above, any information, which is material to this application, or any subsequent licensure.

I authorize the release of the information contained in this evaluation form to the Texas Medical Board.

_Sonia Hernandez_
Applicant's Signature

**EVALUATING PHYSICIAN:**
A person holding one or more of the following positions must complete this evaluation: Chief of Staff, Department Chairman, Medical Director, or Training Director. Letters of recommendation or standard institutional verification forms will not be accepted.

• After completing this evaluation, place this form in an envelope of the hospital/institution that you represented, seal the envelope and place your signature over the outside sealed envelope flap.
• If you have any questions regarding how to complete this form contact the Licensure Department at 512-305-7030.

Title:  ☐ Chief of Staff
        ☐ Department Chairman
        ☐ Medical Director
        ☐ Training Director

Evaluating Physician's
Name/Degree: _____
                              Printed

Title: _____

Phone: _____        Address: _____

Fax: _____          E-Mail: _____
Evaluating Physician's License Number and
State of Licensure

LICENSURE APPLICATION FORM L PHYSICIAN LICENSURE EVALUATION                    Version 05.14

**FORM L**

Applicant's Name _Dr Sonia Hernandez_                    **Page 2**
                    Printed

**This is Important:** All information on this Form L, (including attachments that you provide as the Evaluating Physician) regarding a licensure applicant is confidential pursuant to §164.007(c) of the Medical Practice Act. However, the Board must provide a copy of this Form L and attachments to an applicant when an application is referred to the Licensure Committee for licensure determination. Any information furnished by you is further subject to Chapter 160.010, of the Medical Practice Act, immunity from Civil Liability.

---

**VERIFICATION OF POST-GRADUATE TRAINING**

This section relates to postgraduate training. If this individual did not complete postgraduate training at this institution please skip to the Verification of Professional History section.

**PROGRAM PARTICIPATION:**

Report *incomplete* postgraduate years (PGY) separately from those that were successfully completed.

If the postgraduate year is currently in progress, report the expected completion date in the "To" field.

Report Internships, Residencies and Fellowships separately. Use one section per department.

| | |
|---|---|
| PGY: _____<br>____ Internship<br>____ Residency<br>____ Fellowship<br>____ Research | Department:<br><br>From: __/__/__        To: __/__/__<br>Credit received?<br>☐ Full   ☐ *Partial  ☐ In progress<br>*For partial credit-- how many months? |
| PGY: _____<br>____ Internship<br>____ Residency<br>____ Fellowship<br>____ Research | Department:<br><br>From: __/__/__        To: __/__/__<br>Credit received?<br>☐ Full   ☐ *Partial  ☐ In progress<br>*For partial credit-- how many months?_____ |

**UNUSUAL CIRCUMSTANCES:**

Please attach an explanation for any "yes" response.

1. Did this individual ever take a leave of absence or break from training? ☐Yes ☐ No
2. Did this individual resign from training? ☐Yes ☐ No
3. Were any limitations or special requirements placed upon this individual for professionalism or behavioral issues? ☐Yes ☐ No
4. Did this individual ever receive a written warning or documented counseling about his/her behavior? ☐Yes ☐ No
5. Was this individual ever placed on probation for any reason? ☐Yes ☐ No
6. Is this individual currently under investigation? ☐Yes ☐No
7. Were this individual's privileges or duties ever reduced, suspended, or revoked? ☐Yes ☐ No
8. Did this individual experience delayed promotion or delayed advancement to the next level? ☐Yes ☐ No
9. Was this individual informed his/her contract would not be renewed? ☐Yes ☐ No
10. Was this individual suspended, terminated, or dismissed from training? ☐Yes ☐ No

---

**VERIFICATION OF PROFESSIONAL HISTORY**

1. This evaluation is based on  ☐Personal Knowledge        ☐Review of Credential File

2. How long have you known the applicant?  Years_____    Months _____

3. Is the applicant related to you?                          ☐ Yes    ☐ No

4. Do you know the applicant well?                           ☐ Yes    ☐ No

5. Has your acquaintance with the applicant continued until recent date?   ☐ Yes    ☐ No

6. Do you consider the applicant:
   (a) Reliable?                                             ☐ Yes    ☐ No
   (b) Ethical?                                              ☐ Yes    ☐ No
   (c) Of good character?                                    ☐ Yes    ☐ No

7. Please rate the applicant:

| | Excellent | Good | Average | Poor |
|---|---|---|---|---|
| (a) Professional ability | | | | |
| (b) Attention to duties | | | | |
| (c) Breadth of education | | | | |
| (d) Interpersonal skills | | | | |

LICENSURE APPLICATION FORM L PHYSICIAN LICENSURE EVALUATION            Version 08.14

**FORM L**

Applicant's Name ___Dr. Sonia Hernandez___    Page 3

Printed

8. Has applicant, to your knowledge, ever been guilty of:
   (a) Fraud or dishonesty?    ☐ Yes    ☐ No
   (b) Unprofessional conduct?    ☐ Yes    ☐ No

9. To your knowledge, has the applicant ever:
   (a) been warned, censured, reprimanded, disciplined, had admissions monitored or privileges limited
       or suspended?    ☐Yes    ☐No
   (b) had disciplinary action taken against him/her by a licensing agency?    ☐Yes    ☐No
   (c) been denied or surrendered a federal or state controlled substance permit?    ☐Yes    ☐No
   (d) been arrested, fined, charged with or convicted of a crime, indicted, imprisoned
       or placed on probation?    ☐Yes    ☐No
   (e) been a defendant in a legal action involving professional liability (malpractice) or had a
       professional liability claim paid in his/her behalf or paid such a claim him/herself?    ☐Yes    ☐No
   (f) been placed on probation, asked to withdraw, or reprimanded?    ☐Yes    ☐No
   (g) been terminated, resigned in lieu of termination or during investigation?    ☐Yes    ☐No

10. If you answered "yes" to any of the above questions, please provide any additional information you may have, including
    the names of other individuals who may have information concerning this applicant.

    _____

    _____

    _____

11. Are the dates of privileges provided by the applicant on the top portion of this form accurate?    ☐ Yes    ☐ No

12. If not, please provide the correct dates: Beginning month _____ / year _____ Ending month _____ / year _____

    Evaluating Physicians Name: _____    _____
                                              Printed                          Signature

    Date: _____

    REMINDER: Evaluating Physician after completing this evaluation, place this form in an envelope of the
              hospital/institution that you represent, seal the envelope and place your signature over the outside
              sealed envelope flap. Send to:
              Texas Medical Board
              PRC, MC-240
              P.O. Box 2029
              Austin, TX 78768-2029

Exhibit C

## MUTUAL RELEASE AND AGREEMENT

This Mutual Release and Agreement("Agreement") is made and entered into this $\underline{5^{rd}}$ day of __M ay__, 2018 (the "Effective Date"), by and between Kwiat Eye and Laser Surgery, PLLC), a New York Professional Limited Liability Company ("Kwiat Eye") and David M. Kwiat, M.D. (collectively referred to as "Employer"), and Sonia Hernandez, D.O. ("Employee").

### RECITALS

WHEREAS, Employer operates a medical and surgical practice located at 100 Holland Circle drive, Amsterdam, New York;

WHEREAS, Employee was employed by Employer from March 2016 through April 2018, engaged in various activities relating to the medical and surgical practice;

WHEREAS, Employee's employment with Employer has terminated, effective as of April 13 2018;

WHEREAS, Employee has requested that Employer complete Form L (Physician Licensure Evaluation, Verification of Postgraduate Training and Professional Evaluation) issued by the Texas Medical Licensing Board, thereby providing information and responding to questions on Form L concerning her professional history;

WHEREAS, Employer is willing to complete and sign From L in connection with Employee's application to the Texas Medical Board;

WHEREAS, by completing Form L, Employer is likely to reveal information about Employee that may be considered confidential and may be protected by federal and state law;

WHEREAS, Form L states that Employer is likely protected under §160.010 of the Texas Medical Practice Act, Immunity from Civil Liability, and therefore immune from

potential liability for revealing confidential information on Form L; and

WHEREAS, Employer is unaware of a similar New York State law providing such immunity;

WHEREAS, the parties desire and agree that this Agreement shall constitute a confidential mutual release of all potential claims each may have, now or in the future, against the other arising out of their employment relationship, including the completion of Form L by Employer;

NOW THEREFORE, Employer and Employee, in consideration of the terms, conditions and covenants contained herein, hereby agree as follows:

1. **Incorporation of Recitals.** The Recitals set forth above are incorporated into this section of this Agreement as if fully set forth herein.

2. **Confidential Information Provided by Employer on Form L.** Employer shall, as requested by Employee, complete Form L (Physician Licensure Evaluation, Verification of Postgraduate Training and Professional Evaluation) issued by the Texas Medical Licensing Board.

3. **Mutual Release.** In consideration of the terms, conditions and covenants contained herein, herein, Employee on behalf of herself, her representatives, agents, successors and/or assigns, hereby releases, acquits and forever discharges Employer, its affiliates, representatives, officers, employees, agents, successors and/or assigns, and Employer on behalf of itself, its affiliates, representatives, officers, employees, agents, successors and/or assigns, hereby releases, acquits and forever discharges Employee, her representatives, agents, successors and/or assigns, from any and all actions, claims, or liability of any kind, connected with the facts or events related to the employment relationship between Employer and Employee. Provided, however, that the releases set forth herein shall not apply to any obligations arising from or under this Agreement, or to any claims that may arise in the future that are unrelated to claims or potential claims described in this Agreement.

4. **Employee's Representations.** Employee makes the following representations:

   (i)  Employee has had the opportunity to obtain advice of legal counsel regarding the claims that are released under this Agreement;

2

(ii)    Employee has fully informed herself of the contents, terms, conditions, and effects of this Agreement, and has fully read and understands this Agreement and its contents;

(iii)    No promise or representation of any kind has been made, whether express or implied, to Employee by Employer or by anyone acting on its behalf, except as expressly stated in this Agreement;

(iv)    Employee is not aware of any claim she has or may have against Employer, its officers, agents or representatives that is not stated in this Agreement or released pursuant to the terms of this Agreement;

(v)    Employee is not relying upon the advice of Employer or its legal counsel or representatives as to the legal consequences of this Agreement; Employee hereby releases Employer and its representatives from any and all liability and obligations of any nature whatsoever that may hereafter arise by reason of the legal consequences of this Agreement being other than as anticipated by Employee; and Employee acknowledges and agrees to indemnify and hold harmless Employer, its officers, agents and representatives with respect to any such consequences;

(vi)    Employee realizes that this Agreement forever bars her from making any claims against Employer, its officers, agents or representatives relating to the employment relationship between Employer and Employee and that this Agreement shall not bar any claims which may hereafter arise under this Agreement or any future unrelated claims.

5.    <u>Reading of This Agreement</u>.   The parties expressly represent and warrant that each has read and understands the terms of this Agreement and that each is freely and voluntarily executing this Agreement.  The parties also represent and warrant that they have relied wholly upon their own understanding of this Agreement and entered this Agreement of their own free will without reliance upon any statement, inducement, promise or representation by the other not fully expressed herein.

6.    <u>Controlling Law</u>.  This Agreement shall be governed by, enforced and construed in accordance with the laws of the State of New York.  The parties agree that in the event a proceeding is brought by either of them to enforce this Agreement, such proceeding shall be brought in

Montgomery County, State of New York.

7.        <u>Dispute Resolution.</u>  The parties agree that, in the event a dispute should arise between them concerning their respective rights and obligations under this Agreement or any other matter relating to their employer-employee relationship, it would not be in their best interests to engage in litigation.  In order to avoid litigation, and in the spirit of good faith, the parties agree to exercise their best efforts to resolve the dispute as soon as possible.  In the event the parties cannot resolve the dispute within 30 days, they shall submit the dispute to Mediation.  Should mediation fail, the parties agree to submit their dispute to binding arbitration in accordance with the rules of the American Arbitration Association ("AAA"), provided, however, that the arbitration may be informal, the parties may select their arbitrator or arbitrators using any procedure to which they may agree, and the arbitration need not be presided over by the AAA.  In the event the parties are unable to agree to an arbitrator or arbitrators, each party will select an arbitrator, and the arbitrators in turn shall select a third arbitrator.  The arbitrators shall have the power to issue mandatory orders and restraining orders in connection with the arbitration. The award rendered by the arbitrators shall be final and binding on the parties, and judgment may be entered thereon in any court of competent jurisdiction.  Each party shall bear the cost of his/her/its own attorneys fees or fees charged by any other professional advisers in connection with any such proceedings.  The parties agree to share equally the cost of any fees charged by mediators, arbitrators or any other neutral dispute resolution providers.

8.        <u>Notices.</u>  Any notice, or other communication required by or relating to this Agreement shall be given in writing and delivered in person or by mail (certified or registered mail, return receipt requested), by one party to the other at the address set forth below or to such other

address as the recipient may subsequently furnish in writing to the sender. Unless otherwise provided herein, notice shall be effective upon receipt.

TO EMPLOYER:

    Kwiat Eye and Laser Surgery, PLLC
    100 Holland Circle Drive
    Amsterdam, NY 12010
    ATTN: David M. Kwiat, M.D.

TO EMPLOYEE:

    Dr. Sonia Hernandez
    271 Market Street
    Amsterdam, NY 12010

    9.     **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties and their respective, affiliates, subsidiaries, representatives, officers, employees, agents, successors and/or assigns. Except as expressly provided herein to the contrary, the covenants contained this Agreement shall survive indefinitely. This Agreement shall become binding as of the Effective Date when signed by all parties hereto.

    10.     **Headings**. Section headings herein are for convenience and for reference only, and shall in no way affect the interpretation of this Agreement.

    11.     **Severability**. The provisions of this Agreement are severable. If any portion of this Agreement is ever found to be invalid or unenforceable, in whole or in part, as to any particular claim or any particular circumstance, this Agreement shall remain fully valid and enforceable as to all of its remaining terms, and all remaining claims and circumstances.

    12.     **Modification**. In order to be valid, any amendment, modification and/or change to this Agreement must be made in writing and signed by both parties.

5

13.      No Implied Waivers.  Failure by either Party at any time to require performance by the other Party of any provision herein shall in no way affect the right to require full performance any time thereafter, nor shall the waiver by any Party of a breach of any provision of this Agreement constitute a waiver of the provision itself or of the right to pursue any legal or equitable remedies available as a result of such breach.

IN WITNESS WHEREOF, the Parties hereto have affixed their respective signatures.

EMPLOYER                                                    EMPLOYEE

KWIAT EYE and LASER SURGERY, PLLC

_____              _____
By: David M. Kwiat, M.D., Member                    Sonia Hernandez, D.O.

_____
David M. Kwiat, M.D., Individually

6

Exhibit D

Harvey P. Sanders, Esq.
David J. DeChellis, Esq.



Of Counsel:
Helaine E. Sanders, LMSW, Esq.
*Retired*

### Sanders & Sanders
Attorneys at Law
www.wnyemploymentlaw.com

May 7, 2018

Via Email (steve@kwiateye.com)

Mr. Steve Kwiat
Office Manager
KwiatEye & Laser Surgery
100 Holland Circle Drive
Amsterdam, NY 12010

Re:    Sonia Hernandez, D.O.

Dear Mr. Kwiat:

I represent Dr. Hernandez in connection with the submittal of her Form L to the Texas Medical Board. I understand from Dr. Hernandez that you are refusing to provide the Form in the absence of a signed Mutual Release and Agreement. There is no legal justification for you to do so. Dr. Hernandez has signed the form authorizing the release of the information. The Texas Medical Board has noted that the Texas Medical Practice Act grants certain immunity to entities providing the relevant information.

The Texas Medical Board requires the information in order to process her application. Dr. Hernandez has two potential job offers in Texas, both of which are conditioned on the Texas Medical Board processing her application. All other necessary information has been supplied. Your failure to return the document will prevent the processing of her application. This would constitute tortious interference with a prospective contractual relationship and would expose KwiatEye to liability for the lost wages Dr. Hernandez would incur if she is unable to take to the position.

Given the time sensitivity, I urge you to reconsider your position and to send me a fully completed Form L by return email.

Sincerely,

Harvey P. Sanders

**Harvey Sanders**

| | |
|---|---|
| **From:** | Harvey Sanders <harvey.sanders@wnyemploymentlaw.com> |
| **Sent:** | Monday, May 07, 2018 10:26 PM |
| **To:** | 'steve@kwiateye.com' |
| **Subject:** | Sonia Hernandez, D.O. |
| **Attachments:** | Hernandez letter.pdf |

Please see attached letter.

Harvey P. Sanders, Esq.
Sanders & Sanders
401 Maryvale Drive
Cheektowaga, NY 14225

(716) 839-1489
(716) 839-1512 (fax - not for service)
www.wnyemploymentlaw.com

Notice: This message is intended only for the individual or the entity to whom it is addressed, and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If the reader of this message is not the stated recipient, or employee or agent responsible for delivering the message to the stated recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete the message. Thank you.

## Harvey Sanders

| | |
|---|---|
| **From:** | Harvey Sanders <harvey.sanders@wnyemploymentlaw.com> |
| **Sent:** | Monday, May 14, 2018 12:28 PM |
| **To:** | 'drkwiat@kwiateye.com' |
| **Subject:** | Sonia Hernandez, D.O. |
| **Attachments:** | Hernandez letter.pdf |

Please see attached letter.

Harvey P. Sanders, Esq.
Sanders & Sanders
401 Maryvale Drive
Cheektowaga, NY 14225

(716) 839-1489
(716) 839-1512 (fax - not for service)
www.wnyemploymentlaw.com

Notice: This message is intended only for the individual or the entity to whom it is addressed, and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If the reader of this message is not the stated recipient, or employee or agent responsible for delivering the message to the stated recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete the message. Thank you.

1

## Harvey Sanders

**From:** Harvey Sanders <harvey.sanders@wnyemploymentlaw.com>
**Sent:** Friday, May 18, 2018 2:36 PM
**To:** 'drkwiat@kwiateye.com'
**Subject:** RE: Sonia Hernandez, D.O.
**Attachments:** Hernandez letter.pdf

I am disappointed not to have received a response to my letter (additional copy attached). The Texas Medical Board still has not received the form L and Dr. Hernandez may lose out on that job in Texas. She recently interviewed for another position in New York with Chenango Eye Associates. Dr. Cynthia Bringlin called your office to simply verify employment. Neither you nor Steve Kwiat extended the professional courtesy to Dr. Hernandez or Dr. Bringlin by simply returning the call to confirm employment. If Dr. Hernandez loses those opportunities, you may be held liable for tortious interference with a prospective contractual obligation. It is in your interest for Dr. Hernandez to obtain new employment which would limit your legal exposure for lost wages. I do not understand why you would not want to do so. Submitting the form L and confirming the employment to Chenango Eye Associates is in your best interest.

In the absence of a response to my letter and this email by the end of next week, Dr. Hernandez will have no alternative but to consider her legal options and to proceed accordingly. I urge you to not ignore this communication.

Harvey P. Sanders, Esq.
Sanders & Sanders
401 Maryvale Drive
Cheektowaga, NY 14225

(716) 839-1489
(716) 839-1512 (fax - not for service)
www.wnyemploymentlaw.com
Notice: This message is intended only for the individual or the entity to whom it is addressed, and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If the reader of this message is not the stated recipient, or employee or agent responsible for delivering the message to the stated recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete the message. Thank you.

**From:** Harvey Sanders [mailto:harvey.sanders@wnyemploymentlaw.com]
**Sent:** Monday, May 14, 2018 12:28 PM
**To:** 'drkwiat@kwiateye.com'
**Subject:** Sonia Hernandez, D.O.

Please see attached letter.

Harvey P. Sanders, Esq.
Sanders & Sanders
401 Maryvale Drive
Cheektowaga, NY 14225

(716) 839-1489
(716) 839-1512 (fax - not for service)
www.wnyemploymentlaw.com
Notice: This message is intended only for the individual or the entity to whom it is addressed, and may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If the reader of this message is not the stated recipient, or employee or agent responsible for delivering the message to the stated recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete the message. Thank you.

1

Exhibit E

**From:** steve@kwiateye.com <steve@kwiateye.com>
**Sent:** Friday, April 13, 2018 3:37:23 PM
**To:** Hernandez, Sonia
**Subject:** Term Letter Hernandez

Dr. Hernandez

Please see attached.

Steve Kwiat
Office Manager
KwiatEye & Laser Surgery
Mohawk Valley Eye Surgery Center
Phone: 518.598.8269

Kwiat Eye and Laser Surgery, PLLC
100 Holland Circle Drive
Amsterdam, NY 12010

April 13, 2018

Sonia Hernandez, D.O.

Dear Dr. Hernandez,

This letter is to inform you that, effective as of the close of business on April 13, 2018, your employment with Kwiat Eye and Laser Surgery, PLLC ("Kwiat Eye") is terminated.

The inability to become credentialed with insurance providers of our patients, including Fidelis Care (administrator of New York State's Medicaid program) and Excellus BlueCross BlueShield, has prevented you from being able to perform the services for which you were hired, as set forth in the employment Agreement between you and Kwiat Eye entered into on December 31, 2015.

Your employment is terminated under paragraphs 1.4, 1.5, 10.3 and 10.4 of the Agreement, and for your failure to inform Dr. Kwiat that your ability to maintain your license to practice ophthalmology in the State of New York may be jeopardized by a Final Order issued by the Texas Medical Board on December 3, 2015, of which you were aware before commencing employment with Kwiat Eye.

We wish you the best in your future endeavors.

Sincerely,

[illegible] Eye and Laser Surgery PLLC
[illegible] Holland [illegible] Drive
[illegible] Amsterdam, New York [illegible]

CERTIFIED MAIL

7016 0360 0000 6523 4423

U.S. POSTAGE
PAID
AMSTERDAM, NY
12010
APR 17, 18
AMOUNT
$6.20
R2305H127963-03

1000

12010

[redacted]

4/23

5/3

LN 4/18/17

-25347